**Kathleen HENKE, et al., Appellants,**

v.

**Dr. Charles K. DUNHAM, et al., Dr. Paul Schanfield, Respondents,**

**Neurological Associates of St. Paul, P.A., Defendant,**

**Dr. Donald C. Peterson, Respondent.**

**No. C5–89–1429.**

Court of Appeals of Minnesota.

Jan. 23, 1990.

Review Denied March 22, 1990.

Owen L. Sorenson, Elizabeth J. Keyes, Stringer & Rohleder, Ltd., St. Paul, for Kathleen Henke, et al.

William H. Leary, Geraghty, O'Loughlin & Kenney, St. Paul, for Dr. Charles K. Dunham, et al.

Robert M. Frazee, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for Dr. Paul Schanfield.

Luther M. Amundson, James M. Crist, Maser & Amundson, P.A., Minneapolis, for Dr. Donald C. Peterson.

Heard, considered and decided by NORTON, P.J., and HUSPENI and STONE *, JJ.

## OPINION

BRUCE C. STONE, Judge.

Appellants Kathleen and John Henke challenge the trial court's order and final judgment dismissing their medical malpractice action for failure to timely comply with Minn.Stat. § 145.682 (1988). We reverse and remand.

## FACTS

Appellant Kathleen Henke saw respondent physicians between February and March of 1986 and underwent diagnostic tests, including a CT and MRI scan. Respondent Dr. Sheldon Damberg, a radiologist, reported the CT scan to be essentially normal. Respondent Dr. L.H. Levitan, also a radiologist, reported that the MRI indicated an abnormality, possibly a tumor. Seemingly dissatisfied with respondents' care, Kathleen saw a neurosurgeon at the University of Minnesota, who diagnosed a herniated disc and performed corrective surgery on March 17, 1986.

Kathleen and her husband, John, commenced a medical malpractice action against respondents in February 1988 alleging respondents' failure to diagnose Kathleen's herniated disc resulted in permanent nerve damage to her leg. In late September, respondents (except Drs. Peterson and Schanfield) moved the court to dismiss the Henkes' complaint pursuant to Minn.Stat. § 145.682 after they failed to timely file an affidavit identifying their expert witnesses and provide answers to interrogatories. The hearing date was set for October 14, 1988.

On October 12, 1988, two days before the hearing and approximately 60 days late, the Henkes filed the affidavit in order to comply with the statute. On the day of the hearing, they filed their supporting memorandum. At the hearing, the trial court refused to consider the affidavit and documents the Henkes had filed since they were untimely under the local rules. The court did hear their oral arguments, but subsequently granted respondents' motions to dismiss with prejudice by order dated October 14, 1988.

A second trial court, however, hearing respondent Dr. Schanfield's motion to dismiss and the Henkes' counter-motion to enlarge the time for compliance, denied Dr. Schanfield's but granted the Henkes' motion. The second trial court found the Henkes' failure to comply was due to excusable neglect. Consequently, it extended the time to comply with Minn.Stat. § 145.682 to October 12, 1988, the date the Henkes filed their affidavit. While recognizing the first trial court's prior conflicting order, the second trial court noted in its memorandum that this case should be heard on its merits.

The Henkes attempted to vacate the first trial court's order of dismissal before a third trial court but were unsuccessful. Consequently, they sought, and were granted, a writ of prohibition by the court of appeals. The first trial court's order of October 14, 1988, was reversed and vacated and the case was remanded for reconsideration of the time extension request and respondents' motions to dismiss.

On reconsideration, the first trial court refused to grant the Henkes' motion for an extension of time to comply with the statute. It granted respondents' motions to dismiss after determining that no excusable neglect existed. Final judgment was entered in favor of all respondents except Dr. Schanfield. (Dr. Schanfield did not seek review of the denial of his motion to dismiss.)

## ISSUES

1. Did the trial court abuse its discretion in denying the Henkes' motion for an extension of time to comply with Minn.Stat.

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. VI, § 2.

§ 145.682 and dismissing their complaint with prejudice?

2. Does Minn.Stat. § 145.682 unconstitutionally deny the Henkes of their right to equal protection of the laws?

## ANALYSIS

### 1. *Dismissal for Failure to Comply With Minn.Stat. § 145.682.*

█ Respondents sought and obtained a statutory dismissal of the Henkes' complaint because of procedural irregularities pursuant to Minn.Stat. § 145.682. Therefore, an abuse of discretion standard is appropriate in our review of this case. *See Dennie v. Metropolitan Medical Center,* 387 N.W.2d 401, 404 (Minn.1986); *see also Thorson v. Rice County District One Hospital,* 437 N.W.2d 410, 413–14 (Minn.1989) (defendant brought "summary judgment" motion for plaintiffs' alleged failure to comply with Minn.Stat. § 145.682, but the supreme court referred to the motion as one for "dismissal" under the statute).

Minn.Stat. § 145.682 (1988) provides certain requirements, and time limits for performance of those requirements, for plaintiffs commencing medical malpractice actions. The statute necessitates submission of an affidavit with a summons and complaint stating that the plaintiff's attorney has reviewed the facts of the case with an expert whose opinion is that one or more of the defendants deviated from the applicable standard of care and caused injury to the plaintiff. Minn.Stat. § 145.682, subd. 3(a). There is no dispute that the Henkes properly submitted this affidavit.

The plaintiff, however, must produce a second affidavit within 180 days after the action is commenced. Minn.Stat. § 145.682, subd. 2, clause (2). Subdivision 4 imposes the requirements for the second affidavit and reads as follows:

Subd. 4. Identification of experts to be called. The affidavit required by subdivision 2, clause (2), must be by the plaintiff's attorney and state the identity of each person whom plaintiff expects to call as an expert witness at trial to testify with respect to the issues of malpractice or causation, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion. Answers to interrogatories that state the information required by this subdivision satisfy the requirements of this subdivision if they are signed by the plaintiff's attorney and served upon the defendant within 180 days after commencement of the suit against the defendant.

The parties or the court for good cause shown, may by agreement, provide for extensions of the time limits specified in subdivision 2, 3, or this subdivision. Nothing in this subdivision may be construed to prevent either party from calling additional expert witnesses or substituting other expert witnesses.

It is the filing of the second affidavit that presents the issue in this case. The Henkes failed to file the required second affidavit within 180 days of initiating their lawsuit. As a result, the Henkes' complaint was dismissed with prejudice pursuant to Minn.Stat. § 145.682, subd. 6.

The Henkes also failed to comply with the trial court's local rules, which impose the following requirement:

(2) At least seven (7) Calendar days prior to the date of the hearing, any party opposing a motion shall serve and file with the Court Administrator the proposed order required by Rule f(2) and any documents allowed by Rule f(3).

Spec.R.Pract. 2nd Jud.Dist. 8(g)(3). Failure to timely file these documents may result in the court's refusal to "permit oral argument, * * * [or] consider documents submitted by [the party failing to comply] * * *." *Id.*

Under the circumstances of this case, we cannot say the Henkes' neglect was so egregious so as not to be excusable or that it should preclude their day in court. By its order of dismissal with prejudice, the trial court has given the Henkes "the most punitive sanction which can be imposed" for a procedural violation. *See Firoved v. General Motors Corp.,* 277 Minn. 278, 283, 152 N.W.2d 364, 368 (1967); *see also Stern v. Dill,* 442 N.W.2d 322, 324 (Minn.1989)

(supreme court concluded Minn.Stat. § 145.682 is procedural in nature). This "runs counter to the primary objective of the law to dispose of cases on the merits." *Firoved,* 277 Minn. at 283, 152 N.W.2d at 368; *see also Guillaume & Associates, Inc. v. Don–John Co.,* 336 N.W.2d 262, 264 (Minn.1983) (policy behind rules of civil procedure is to try cases on the merits and seek a just determination of every action).

While we recognize that procedural rules should be obeyed, the trial court's dismissal of the Henkes' case seems to be an unwarranted punishment, particularly since there has been no showing that respondents would be substantially prejudiced if an extension of time was granted. Nothing here should be taken to preclude the imposition of costs, in an appropriate case, for the delayed filing.

We must also note that the second trial court granted the Henkes' request to enlarge the time to comply and denied Dr. Schnafield's motion to dismiss. It would be unfair to require one defendant to bear the entire burden of defense. Therefore, reversing and remanding here will result in equal treatment for all defendants.

2. *Constitutionality of Minn.Stat. § 145.682.*

█ The Henkes contend Minn.Stat. § 145.682 is an unconstitutional denial of their right to equal protection of the laws because it treats similarly situated plaintiffs differently. They argue that no legislation, relative to other tortfeasors, requires the submission of a similar affidavit.

When a statute is challenged on equal protection grounds, the general rule is that the legislation is presumptively constitutional and will be sustained if it is rationally related to a legitimate state interest.[1] *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *AFSCME Councils 6, 14, 65 & 96 v. Sundquist,* 338 N.W.2d 560, 569–70 (Minn.1983). This rational basis test requires examination of two questions:

(1) Does the challenged legislation have a legitimate purpose and

(2) Was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose?

*Western & Southern Life Insurance Co. v. State Board of Equalization of California,* 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981); *AFSCME Councils,* 338 N.W.2d at 570.

Minn.Stat. § 145.682 was adopted by the legislature in an attempt to "eliminate nuisance malpractice suits." *Parker v. O'Phelan,* 414 N.W.2d 534, 537 (Minn.Ct.App. 1987), *aff'd by an equally divided court,* 428 N.W.2d 361 (Minn.1988). It could reasonably be concluded that lawmakers believed this statute would further the legitimate state interest of discouraging meritless medical malpractice claims in an effort to reduce increasing insurance premiums and health care costs. *See, e.g., Johnson v. Farmers Union Central Exchange, Inc.,* 414 N.W.2d 425, 431 (Minn.Ct.App.1987) (reducing the cost of personal liability insurance is a legitimate governmental objective), *pet. for rev. denied* (Minn. Nov. 24, 1987).

Viewed in this light, it has not been established that Minn.Stat. § 145.682 does not comply with constitutional requirements.

### DECISION

The trial court abused its discretion in refusing to grant the Henkes' motion for an extension of time to comply with Minn. Stat. § 145.682. Thus, dismissal of the Henkes' action with prejudice was unwarranted.

Reversed and remanded.

---

**1.** The rational basis test is appropriate here because the statute does not impinge upon a fundamental right or concern a suspect class.